Massey & Gail LLP
Kenneth M. Goldman (State Bar No. 139509)
kgoldman@masseygail.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 633-4394
Facsimile: (312) 379-0467

Leonard A. Gail (*pro hac vice*)
lgail@masseygail.com
Eli J. Kay-Oliphant (*pro hac vice*)
ekay-oliphant@masseygail.com
50 East Washington Street, Suite 400
Chicago, Illinois 60602
Telephone: (312) 283-1590

Attorneys for Plaintiff Michael F. Bartholomeusz

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| Michael F. Bartholomeusz,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>HzO, Inc.,<br><br>　　　　Defendant. | Case No: 17-cv-5165-JSC<br><br>**COMPLAINT FOR:**<br><br>(1) BREACH OF CONTRACT;<br>(2) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; AND<br>(3) DECLARATORY RELIEF.<br><br>**DEMAND FOR JURY TRIAL**<br><br>**[REDACTED]**<br><br>Judge Jacqueline Scott Corley |

Massey & Gail LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 633-4394

COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF

Plaintiff Michael F. Bartholomeusz ("Plaintiff") alleges as follows:

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff seeks damages and declaratory relief to remedy Defendant's denial of bargained-for compensation, termination of Plaintiff's stock options, and asserted claw-back of consideration already paid.

2. From June 2013 until November 2016, Plaintiff was Chief Executive Officer of Defendant HzO, Inc. ("Defendant"). As CEO of Defendant, Plaintiff led the Defendant to substantial competitive and financial success.

3. In or around September 2016, Plaintiff decided to relocate for family health reasons. So he and Defendant mutually and amicably entered into a Separation Agreement. It provided, in relevant part, that Plaintiff would continue to be paid for six months for advisory services and that his stock options would continue to vest during that period.

4. The Separation Agreement permitted Defendant to claw back the compensation paid to Plaintiff for advisory services and terminate his options in narrow circumstances: If and only if Plaintiff "knowingly" participated in or condoned booking of revenue in a manner inconsistent with United States generally accepted accounting principles ("GAAP").

5. Defendant has ginned up such a claim relating to a customer named Shenzhen Leyard Optoelectronics Co. Ltd. ("Glux/Leyard") to cut short Plaintiff's pay, claw back his compensation, and terminate his stock options.

6. This asserted justification is pretextual. The Glux/Leyard revenue was recorded consistent with GAAP. In all events, Plaintiff certainly did not know otherwise.

## PARTIES

7. Plaintiff is an individual residing in Emeryville, California, in Alameda County.

8. Defendant HzO, Inc. is a privately-held company that manufactures liquid protection solutions for devices and electronics in technical, industrial, medical, and consumer industries. Defendant is incorporated in Delaware and has its principle place of business in Utah.

## JURISDICTION AND INTRADISTRICT ASSIGNMENT

9. This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C.

§ 2201, because Plaintiff seeks a declaration of the rights and other legal relations as between Plaintiff and Defendant, and 28 U.S.C. § 1332, because the dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this district because the Separation Agreement was signed in the Northern District of California and Plaintiff resides in Alameda County.

## GENERAL ALLEGATIONS

### *Plaintiff's Successful Growth Strategy*

11. Defendant named Plaintiff its Chief Executive Officer in June 2013.

12. As CEO, Plaintiff successfully led and grew Defendant's business. Plaintiff's strategy and leadership focused on securing blue-chip accounts as the pillars of long term sustainable growth. This maximized the enterprise's value by associating with marquee customers and developing a world-class brand.



15. As a part of these impressive results, Defendant booked revenue related to sales to any number of customers – domestic and overseas – during Plaintiff's term as CEO. Glux/Leyard was one such customer.

16. Over approximately 18 months, Defendant booked approximately $1.6 million in Glux/Leyard revenue. The accounting for such purchases, like the accounting for all customer revenue, was determined by several corporate officers and board members.

17. Like nearly all CEOs, Plaintiff delegated significant discretion on accounting matters to his financial and sales teams. In particular, Plaintiff relied upon Defendant's Chief

1  Financial Officer Larry Polizzotto, as well as Chief Accounting Officer Craig Ricks, Corporate

2  Controller Vallen Blackburn, Director of Finance Justin Romph, and others, to determine

3  appropriate revenue and to comply with GAAP.

4  18.  Mr. Simone Maraini, Defendant's Head of Sales and current CEO, managed the

5  Glux/Leyard account and had formal accounting and legal background and experience. He

6  worked with Defendant's finance team to account for customer revenue.

7  19.  Plaintiff empowered Defendant's finance and sales teams to do what was necessary

8  to ensure that revenue was booked properly and, to the extent necessary, to ensure compliance,

9  Plaintiff advised them to use and rely on in-house legal counsel Jeff Holman, outside legal counsel

10  David Broadwin, and outside accounting experts.

11  20.  The Defendant's sales and finance teams, including Maraini, Polizzotto, and the

12  Controllers, reviewed and approved booking the Glux/Leyard revenue.

13  21.  The Finance and Audit Committees of the Defendant's Board of Directors also

14  approved booking the Glux/Leyard revenue.

15  22.  To Plaintiff's knowledge and belief, the Glux/Leyard revenue was booked in

16  accordance with GAAP.

### *The Separation Agreement*

18  23.  In 2016, Plaintiff needed to relocate to California due to personal reasons related to

19  the health of his family. He requested and Defendant granted him an amicable transition. The

20  parties agreed that the termination would be without cause. The transition was orderly, as Plaintiff

21  was appointed as an advisor to Defendant's Board of Directors.

22  24.  The parties entered into the Separation Agreement that terminated Plaintiff's

23  employment and Plaintiff's Employment Agreement as of November 15, 2016 (the "Effective

24  Date").

25  25.  The Separation Agreement provides that, in exchange for Plaintiff's transition and

26  advisory services for six months from the Effective Date, as reasonably requested, Defendant

27  a.  Would pay Plaintiff $25,416.67 per month;

28  b.  Would pay Plaintiff an amount equal to one half of the cost of Plaintiff's COBRA

Massey & Gail LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 633-4394

COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF

3

health care coverage;

    c. Agreed that Plaintiff's stock options would continue to vest until the end of the six-month period; and

    d. Agreed that the time period within which Plaintiff had to exercise any vested stock options would extend until two years after the expiration of the six-month period.

26. The Separation Agreement provides that Defendant "may terminate all payments to you, and you shall promptly repay to the Company all payments made do [sic] you under this Agreement, and all of your vested and unvested stock options shall terminate and shall not be exercisable by you if you shall be found to have . . . *knowingly* participated in or condoned booking of revenue in a manner inconsistent with [GAAP]." (Emphasis added.)

27. Plaintiff signed the Separation Agreement because he was certain that he never knowingly participated in or condoned booking of revenue in a manner inconsistent with GAAP.

### *Defendant Pretextually Terminated Plaintiff's Pay, Has Asserted its Intent to Claw Back Paid Consideration, and Has Purported to Terminate Plaintiff's Stock Options*

28. Plaintiff fulfilled his obligations under the Separation Agreement.

29. On April 19, 2017, Defendant sent Plaintiff a letter (the "April 19 Letter"), without meaningful detail or explanation, asserting that Defendant "has come to the conclusion that revenue from [a] purported customer was booked in a manner inconsistent with [GAAP]" and that therefore Defendant was suspending further payments due to Plaintiff under the Separation Agreement.

30. On June 2, 2017, after Plaintiff's counsel demanded additional information regarding Defendant's assertion, Defendant stated that the revenue referenced in the April 19 Letter related to Glux/Leyard.

31. On July 26, 2017, after Plaintiff's counsel again demanded additional detail regarding Defendant's assertion, Defendant claimed its Chief Financial Officer and outside auditors had identified the Glux/Leyard revenue during an annual review of Defendant's financial statements, stated that Defendant "would consider" showing Plaintiff said financial statements if Plaintiff would agree to strict confidentiality provisions, and threatened that "if we cannot come to

Massey & Gail LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 633-4394

COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF

4

a clear settlement, [Defendant] will be obligated to act unilaterally."

32. Defendant made good on its threat. On August 18, 2017, it sent a letter stating that Defendant "has decided to (a) terminate [Plaintiff's] options and (b) demand repayment of all amounts paid to [Plaintiff] under the Separation Agreement."

33. Plaintiff never knowingly participated in or condoned booking of revenue in a manner inconsistent with GAAP.

34. On information and belief, Defendant has taken no adverse actions against any employee or consultant who approved and/or recommended to Plaintiff, or otherwise would have been complicit in the assertedly improper accounting of the Glux/Leyard revenue. This includes Mr. Maraini (who was the Head of Sales and is now Defendant's CEO), Defendant's Chief Financial Officer, the Controllers, internal legal counsel, external legal counsel, and/or the members of the Audit committee of the Board of Directors.

35. On information and belief, Defendant took these adverse actions against Plaintiff as part of a larger strategy to prevent or reduce the dilution of the Defendant's existing shareholders as additional investment in the company is secured.

36. Defendant therefore breached its obligations under the Separation Agreement, improperly denied bargained for and agreed consideration, terminated Plaintiff's stock options without justification, and now has asserted its intent to claw back payments rightfully made to Plaintiff.

## **FIRST CAUSE OF ACTION**

### **Breach of Contract**

37. Plaintiff realleges, as if fully set forth here, the allegations set forth in the preceding paragraphs of this complaint.

38. The Separation Agreement is a contract.

39. Plaintiff has performed all conditions, covenants, and promises required to be performed by Plaintiff pursuant to the Separation Agreement except those which because of the breach by Defendant of its obligations Plaintiff has been excused or prevented from performing.

40. The Separation Agreement states that Defendant may only terminate and claw back

Massey & Gail LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 633-4394

COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF

5

consideration and terminate Plaintiff's stock options if Plaintiff is found to have knowingly participated in or condoned booking of revenue in a manner inconsistent with GAAP.

41. Defendant breached the Separation Agreement by terminating consideration due to Plaintiff despite the fact that Plaintiff never knowingly participated in or condoned booking of revenue in a manner inconsistent with GAAP.

42. Defendant anticipatorily breached the Separation Agreement by asserting it will claw back consideration already paid to Plaintiff despite the fact that Plaintiff never knowingly participated in or condoned booking of revenue in a manner inconsistent with GAAP.

43. Defendant anticipatorily breached the Separation Agreement by terminating Plaintiff's stock options despite the fact that Plaintiff never knowingly participated in or condoned booking of revenue in a manner inconsistent with GAAP.

44. By reason of Defendant's foregoing acts, Defendant has materially breached, and anticipatorily breached, its obligations under the Separation Agreement.

45. As a direct and proximate result of Defendant's breaches of the Separation Agreement, Plaintiff has incurred monetary damages in an amount to be proven at the time of trial but in all events in excess of $75,000, exclusive of interest and costs.

## SECOND CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing

46. Plaintiff realleges, as if fully set forth here, the allegations set forth in the preceding paragraphs of this complaint.

47. The Separation Agreement included an implied covenant of good faith and fair dealing which prevents Defendant from unfairly frustrating Plaintiff's right to receive the benefits of the agreement.

48. Defendant unreasonably interpreted the Separation Agreement in a manner calculated to deny Plaintiff compensation, consideration, and stock options.

49. Defendant breached the implied covenant of good faith and fair dealing by terminating Plaintiff's consideration under the Separation Agreement, asserting its intent to claw back consideration paid, and terminating Plaintiff's stock options despite the fact that Plaintiff did

not knowingly participate in or condone booking of revenue in a manner inconsistent with GAAP.

50. As a direct result of Defendant's conduct, Plaintiff has been damaged and injured and is entitled to recover all loss suffered thereby in an amount to be proven at the time of trial.

### THIRD CAUSE OF ACTION

#### Declaratory Judgment

51. Plaintiff realleges, as if fully set forth here, the allegations set forth in the preceding paragraphs of this complaint.

52. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights.

53. Defendant asserts that it (a) had the right to terminate owed consideration and Plaintiff's stock options and (b) has the right to claw back already-paid consideration.

54. Plaintiff disputes these assertions, and these issues are ripe for adjudication.

55. Declaratory relief is appropriate as the controversy concerns the legal rights and obligations of the parties and the issues raised are sufficiently definite and concrete as to allow a conclusive judgment.

56. Declaratory relief is necessary as Plaintiff will suffer hardship if judicial consideration is withheld.

57. Plaintiff therefore seeks a judicial declaration that Plaintiff did not knowingly participate in or condone booking of revenue in a manner inconsistent with GAAP.

58. Plaintiff further seeks a judicial declaration that Defendant could not and therefore did not terminate his stock options, and that Defendant may not claw back already-paid consideration.

### JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Massey & Gail LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 633-4394

COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF

7

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant and seeks the following relief:

A. Entering a Judgment declaring that Defendant is in breach of the Separation Agreement;

B. Entering a Judgment declaring that Plaintiff did not knowingly participate in or condone booking of revenue in a manner inconsistent with GAAP;

C. Entering a Judgment declaring that Defendant could not and therefore did not legally terminate Plaintiff's stock options and affirms and/or reinstates the same;

D. Entering a Judgment declaring that Defendant could not and therefore did not legally claw back compensation already paid to Plaintiff under the Separation Agreement;

E. Entering a Judgment ordering Defendant to pay Plaintiff compensation owed under the Separation Agreement and improperly withheld;

F. Entering a Judgment enjoining Defendant from attempting to claw back consideration already paid to Plaintiff under the Separation Agreement;

G. A further award of compensatory damages, the amount of which is to be determined at trial;

H. Interest at the legal rate on the foregoing amount;

I. Any attorneys' fees and costs allowable by law; and

J. Such other relief deemed appropriate and just by the Court.

Massey & Gail LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 633-4394

COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF

8

| | | |
|---|---|---|
| Dated: September 6, 2017 | | MASSEY & GAIL LLP |

By:    /s/ Kenneth M. Goldman
        Kenneth M. Goldman

Kenneth M. Goldman (State Bar No. 139509)
kgoldman@masseygail.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 633-4394
Facsimile: (312) 379-0467

Leonard A. Gail
lgail@masseygail.com
Eli J. Kay-Oliphant
ekay-oliphant@masseygail.com
50 East Washington Street, Suite 400
Chicago, Illinois 60602
Telephone: (312) 283-1590
Facsimile: (312) 379-0467

*Attorneys for Plaintiff Michael F. Bartholomeusz*

Massey & Gail LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
(415) 633-4394

COMPLAINT FOR DAMAGES AND
DECLARATORY RELIEF

9